[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Santomauro v. McLaughlin*, Slip Opinion No. 2022-Ohio-2441.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2441

SANTOMAURO, INDIVIDUALLY, AS MGR. OF SUMSS PROPERTY MANAGEMENT, L.L.C., AND AS COEXR. OF THE ESTATE OF MAURO *v*. MCLAUGHLIN, JUDGE. SANTOMAURO, INDIVIDUALLY AND AS COEXR. OF THE ESTATE OF MAURO; ET AL. *v*. SUMMIT COUNTY COURT OF COMMON PLEAS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Santomauro v. McLaughlin*, Slip Opinion No. 2022-Ohio-2441.]

*Prohibition—A probate court has exclusive jurisdiction to tell a coexecutor what to do in the course of administering an estate—Limited writs granted.*

(Nos. 2021-0997 and 2021-1343—Submitted May 10, 2022—Decided July 19, 2022.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In these two original actions, which we have consolidated solely for purposes of a decision, relator Christopher Santomauro ("Christopher") and his

brother, relator Craig Santomauro ("Craig"), coexecutors of their deceased father's estate, seek writs of prohibition to prevent respondent Judge Kelly McLaughlin of the Summit County Court of Common Pleas, General Division ("the general division"), from enforcing her order memorializing a settlement in a judicial-dissolution action.[1]  Christopher and Craig (collectively, "the coexecutors") argue that they are not bound by the order because the general division lacked both subject-matter jurisdiction to issue the order and personal jurisdiction over them.

{¶ 2} We grant a limited writ of prohibition in each action because the general division patently and unambiguously lacked subject-matter jurisdiction to adopt the paragraphs of its order in which it directed Christopher and Craig to take actions as coexecutors.  Our decision on this basis obviates the need to consider the coexecutors' personal-jurisdiction arguments.

## I.  BACKGROUND

### A.  *The underlying case*

{¶ 3} From 2004 to 2011, the coexecutors' father, Anthony (or "Tony") Mauro, managed and held a controlling interest in SUMSS Property Management, L.L.C., a family-owned property-management company.  In 2011, Tony passed away and Christopher succeeded to the position of manager of SUMSS.  In 2013, the Summit County probate court appointed Christopher and Craig as coexecutors of Tony's estate.  The probate estate, which consists of cemetery plots, unspecified personal items, and a one-unit interest in SUMSS, remains open but its settlement is currently stayed.

{¶ 4} In 2014, two of the coexecutors' sisters—Marsha Santomauro and Lisa Madden—filed a civil action in the Summit County Court of Common Pleas

---

1. Craig has also named the Summit County Court of Common Pleas as a respondent, but for simplicity, this opinion will refer to all respondents as "the general division."

against SUMSS ("the underlying case"), seeking its dissolution. Neither Christopher nor Craig was named as a party.

{¶ 5} At a December 2017 hearing, the general division inquired whether a settlement had been reached in the underlying case, to which counsel for Marsha, Lisa, and SUMSS all said "yes." Counsel for SUMSS then read the settlement into the record. Christopher and Craig briefly spoke at the hearing. Both stated that they would assist Lisa in her request to obtain family photographs. And Christopher spoke about SUMSS's rental properties.

{¶ 6} SUMSS later moved to "void" the "purported" settlement agreement, arguing that the agreement (1) lacked a meeting of the minds, (2) bound nonparties, and (3) invaded the probate court's jurisdiction by resolving issues pertaining to the estate. The general division denied the motion, determining that the parties had entered into an enforceable settlement agreement. In April 2018, the general division issued a final, appealable order, which incorporated by reference the terms of the general division's journal entry.

{¶ 7} SUMSS appealed the April 2018 order to the Ninth District Court of Appeals, which affirmed the judgment in part, reversed it in part, and remanded for further proceedings. *See Santomauro v. SUMSS Property Mgt., L.L.C.*, 2019-Ohio-4335, 134 N.E.3d 1250, ¶ 1 (9th Dist.) ("*Santomauro I*"), *appeal not accepted*, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 916. The court of appeals directed the general division to adopt a journal entry on remand that "accurately reflect[ed] the parties' settlement agreement as stated on the record." *Id.* at ¶ 56.

{¶ 8} In February 2021, the general division issued a final, appealable order in response to the court of appeals' judgment. The general division's order contains seven numbered paragraphs that, in its words, constituted "the settlement agreement as agreed to by the parties." Christopher has placed paragraph Nos. IV and VII at issue, whereas Craig has placed paragraph Nos. IV and V at issue.

**{¶ 9}** Paragraph No. IV, which is captioned "The Probate Estate of Anthony Mauro," relevantly provides that the coexecutors shall release Lisa, Marsha, and 17 properties owned by SUMSS from all claims that the estate may have against Lisa, Marsha, and the properties. It also directs the coexecutors to close the estate. Paragraph No. V, which is captioned "Mutual Personal Releases," relevantly provides that Lisa and Marsha shall release all claims they have against SUMSS, Christopher, and Craig, and that SUMSS, Christopher, and Craig shall release all claims they have against Lisa and Marsha. Paragraph No. VII, which is captioned "Transfer of Personal Properties from the Estate," provides that the coexecutors shall transfer to Lisa certain identified personal property and shall transfer one burial lot to Lisa and one burial lot to Marsha.

**{¶ 10}** The underlying case's docket sheet, which the coexecutors have submitted as evidence, establishes that SUMSS appealed the general division's February 2021 order to the court of appeals. That appeal has been stayed pending resolution of this action.

### B. These two actions

**{¶ 11}** In August 2021, Christopher filed a complaint for a writ of prohibition in this court (case No. 2021-0997) challenging the general division's February 2021 order on the grounds that it lacked subject-matter jurisdiction and personal jurisdiction over him. We (1) denied the general division's motion to dismiss, (2) sua sponte dismissed the claims that Christopher asserted individually and as manager of SUMSS, and (3) granted an alternative writ ordering the parties to submit evidence and file briefs in accordance with S.Ct.Prac.R. 12.05, specifying that the parties "shall address only the prohibition claim that [Christopher] assert[ed] in his capacity as coexecutor." 165 Ohio St.3d 1487, 2021-Ohio-4409, 178 N.E.3d 520.

**{¶ 12}** In November 2021, Craig and Andrea Rene Cowan filed a complaint for a writ of prohibition in this court (case No. 2021-1343) challenging the general

division's February 2021 order on the same grounds raised by Christopher. We (1) denied the general division's motion to dismiss, (2) sua sponte dismissed the claims asserted by Craig individually and all the claims asserted by Cowan, and (3) granted an alternative writ ordering the parties to submit evidence and file briefs in accordance with S.Ct.Prac.R. 12.05, specifying that the parties "shall address only the prohibition claim asserted by [Craig] in his capacity as coexecutor." 165 Ohio St.3d 1530, 2022-Ohio-280, 180 N.E.3d 1152.

## II. ANALYSIS

### A. Prohibition

{¶ 13} To establish entitlement to a writ of prohibition, the coexecutors must prove by clear and convincing evidence that (1) the general division has exercised judicial power, (2) its exercise of judicial power is unauthorized by law, and (3) denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *See State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. When jurisdiction is patently and unambiguously lacking, the coexecutors need not establish the lack of an adequate legal remedy. *See id.*

{¶ 14} A court will typically "deny relief in prohibition when a respondent judge has general subject-matter jurisdiction and will deem any error by the judge to be an error in the exercise of that jurisdiction." *State ex rel. Sponaugle v. Hein*, 153 Ohio St.3d 560, 2018-Ohio-3155, 108 N.E.3d 1089, ¶ 24. When this court has determined that a "court of common pleas patently and unambiguously lacks jurisdiction, it is almost always because a statute explicitly removed that jurisdiction." (Footnote deleted.) *Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 9.

{¶ 15} Article IV, Section 4(B) of the Ohio Constitution vests the courts of common pleas with "original jurisdiction over all justiciable matters * * * as may be provided by law." To this end, Ohio law provides that courts of common pleas

have general subject-matter jurisdiction over civil actions. *See State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 88 Ohio St.3d 447, 449, 727 N.E.2d 900 (2000), citing R.C. 2305.01. Probate courts, on the other hand, are "court[s] of limited jurisdiction" and have "only that jurisdiction which is granted by statute and by Constitution." *Zuendel v. Zuendel*, 63 Ohio St.3d 733, 735, 590 N.E.2d 1260 (1992).

**{¶ 16}** In determining whether the general division patently and unambiguously exceeded its jurisdiction by ordering the coexecutors to take certain actions with respect to the estate, we must assess whether a "more specific" probate-related statute divested the general division of its " 'basic statutory jurisdiction to proceed.' " *State ex rel. Novak, L.L.P. v. Ambrose*, 156 Ohio St.3d 425, 2019-Ohio-1329, 128 N.E.3d 209, ¶ 13, quoting *State ex rel. Kaylor v. Bruening*, 80 Ohio St.3d 142, 145, 684 N.E.2d 1228 (1997). The coexecutors claim that R.C. 2101.24 is such a statute.

**{¶ 17}** "In enacting R.C. 2101.24, the General Assembly has specifically set forth what matters can be properly placed before the probate court." *Zuendel* at 735. The coexecutors rely on R.C. 2101.24(A)(1)(c), (i), (j), (k), (l), and (m). Craig also relies on R.C. 2101.24(A)(1)(n). R.C. 2101.24(A) states:

> (A)(1) Except as provided by law, the probate court has exclusive jurisdiction:
>
> * * *
>
> (c) To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;
>
> * * *
>
> (i) To authorize the sale of lands, equitable estates, or interests in lands or equitable estates * * *;

(j) To authorize the completion of real property contracts on petition of executors and administrators;

(k) To construe wills;

(l) To render declaratory judgments * * *;

(m) To direct and control the conduct of fiduciaries and settle their accounts;

(n) To authorize the sale or lease of any estate created by will if the estate is held in trust, on petition by trustee.

**{¶ 18}** Christopher argues that the general division exceeded its jurisdiction by ordering him—as a coexecutor—to take actions on behalf of the estate. Craig argues that—as a coexecutor—he is bound to act in conformity with the probate statutes rather than an order from the general division. Both arguments implicate R.C. 2101.24(A)(1)(c), which vests exclusive jurisdiction in the probate court to "direct and control the conduct" of "executors."

**{¶ 19}** This court does not appear to have squarely addressed the meaning of R.C. 2101.24(A)(1)(c), and the Revised Code does not define it further, so it must be understood according to its ordinary meaning. *See Lingle v. State*, 164 Ohio St.3d 340, 2020-Ohio-6788, 172 N.E.3d 977, ¶ 15. We need not analyze R.C. 2101.24(A)(1)(c) at length because its meaning is readily understood. In simple terms, it means that the probate court has exclusive jurisdiction to tell a coexecutor what to do in the course of administering an estate.

**{¶ 20}** Applying R.C. 2101.24(A)(1)(c) here, we conclude that the general division patently and unambiguously exceeded its jurisdiction when it attempted to exercise control over the coexecutors by directing them to take the actions specified at paragraph Nos. IV and VII of its order. As detailed above, paragraph No. IV directs them to execute a release of claims against the estate and to close the estate, and paragraph No. VII directs them to transfer personal property from the estate.

As R.C. 2101.24(A)(1)(c) makes clear, the power to direct and control the coexecutors' conduct lies exclusively within the probate court's subject-matter jurisdiction, not the general division's.  But although the general division exceeded its jurisdiction with respect to paragraph Nos. IV and VII in its order, we do not agree with Craig that the general division did so with respect to paragraph No. V, because that paragraph addresses mutual personal releases, not releases that Craig must implement as a coexecutor.

{¶ 21} The general division's counterarguments that it did not exceed its jurisdiction are unpersuasive.  First, it invokes the law-of-the-case doctrine, saying that it had no authority to depart from the court of appeals' mandate in *Santomauro I*, 2019-Ohio-4335, 134 N.E.3d 1250.  Although it is true that the general division may not vary a superior court's mandate, *see Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 16, the general division's argument fails because this court is "not bound by prior decisions of a lower court" under the law-of-the-case doctrine, *Farmers State Bank v. Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, 133 N.E.3d 470, ¶ 24.

{¶ 22} Next, the general division argues that to the extent its order does touch on a probate-related issue, the issue is not essential to the settlement agreement.  That contention is unavailing because the general division cannot arrogate subject-matter jurisdiction to itself in the absence of legislative authorization.  *See Seventh Urban, Inc. v. Univ. Circle Property Dev., Inc.*, 67 Ohio St.2d 19, 22, 423 N.E.2d 1070 (1981).  And the general division cites no authority that recognizes an exception for nonessential terms that are incorporated into a settlement agreement.

{¶ 23} Last, the general division argues that it did not exceed its subject-matter jurisdiction because the judicial-dissolution claim in the underlying case falls within its general jurisdiction.  Continuing, the general division asserts that a

court of limited jurisdiction, like the probate court, would lack jurisdiction over this type of claim because it has not been expressly authorized to decide it.

**{¶ 24}** It is true that the probate court's jurisdiction extends to only those matters specifically conferred on it, *see Zuendel*, 63 Ohio St.3d at 735, 590 N.E.2d 1260, and nothing in R.C. 2101.24(A)(1) specifically empowers a probate court to decide claims pertaining to a judicial dissolution. But the general division goes astray in focusing on whether the claim asserted in the underlying case was within its jurisdiction to decide. The relevant issue here is whether, despite initially having general jurisdiction to decide the dissolution claim, the general division later exceeded its jurisdiction when it sought to direct and control the coexecutors' conduct through its order. *See Sponaugle*, 153 Ohio St.3d 560, 2018-Ohio-3155, 108 N.E.3d 1089, at ¶ 24 ("[a] writ of prohibition *is* proper even when the respondent judge has general jurisdiction when the judge has taken an action that exceeds the bounds of the court's statutory authority" [emphasis sic]). And as we have already explained, it did.

**{¶ 25}** In summary, we grant a limited writ of prohibition in each action because the general division patently and unambiguously lacked subject-matter jurisdiction to direct and control the coexecutors' conduct according to the terms set forth in paragraph Nos. IV and VII of its February 2021 order.

### B. Motions to supplement evidence

**{¶ 26}** Christopher has filed an unopposed motion to supplement the evidence with a transcript of a March 2018 hearing that was held in the underlying case. It appears that Christopher is trying to rely on the transcript to establish that the parties in the underlying case thought that some of the contested issues in that case were better left for resolution by the probate court. But this case already illustrates that concern, so we deny the motion.

**{¶ 27}** The general division has also filed an unopposed motion to supplement the evidence in Christopher's case. It seeks to place the following

estate-related documents into the record: an inventory without appraisal, a schedule of assets, a waiver of notice of taking of inventory, and an order from the probate court approving the inventory. The first three documents are already part of the record in Christopher's case. The fourth document, however, does not appear to have been included. Because this document bears on the question of what assets are lawfully included in the estate, and thus tends to clarify the evidence in this case, we permit its placement into the record.

### III. CONCLUSION

{¶ 28} We grant a limited writ of prohibition in each action, vacating paragraph Nos. IV and VII of the general division's order insofar as they attempt to direct and control the coexecutors' conduct. We deny Christopher's motion to supplement the evidence. And we deny in part and grant in part the general division's motion to supplement the evidence.

Limited writs granted.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Lynda Harvey Williams & Assocs., L.L.C., and Kani Harvey Hightower, for relator Christopher Santomauro in case No. 2021-0997.

Meyers, Roman, Friedberg & Lewis, R. Scott Heasley, Kathryn E. Meloni, and Amily A. Imbrogno, for relator Craig Santomauro in case No. 2021-1343.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and John Galonski, Assistant Prosecuting Attorney, for respondents.

_____